IN THE UNITED STATES FEDERAL DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 4:21-CR-40120-KES |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF LAW IN** |
| vs. ) | **SUPPORT OF MOTION TO** |
| ) | **SUPPRESS EVIDENCE AND** |
| TYSON THILL, ) | **STATEMENTS** |
| ) | |
| Defendant. ) | |

This memorandum of law is offered in support of Defendant Tyson Thill's Motion to Suppress Evidence and Statements. The defense moves to suppress the evidence obtained from the Defendant's Samsung Ultra cell phone, on the grounds that the evidence was obtained as fruit of the poisonous tree, following a series of involuntary statements made by the Defendant to law enforcement on July 28, 2021, in violation of the Fourth Amendment, Fifth Amendment and applicable case law.

## BACKGROUND

Homeland Security agents along with agents with South Dakota Division of Criminal Investigation (DCI) served a warrant on the home of Tyson Thill at 8:47 am on July 28, 2021. Mr. Thill was home at the time of the execution of the search warrant and he answered the door for the officers. SA Dave Hohn, SA Andrew Jacob, SA Nate Anderson, SA Mike Janak, Intelligence Specialist Josh Hauck, SA Gary Bunt, SA Jackson Brown, SA Kendra Russell, SA Javy Murgia, SA Dan Fries, and Officer Paul Frerichs participated in the search of the home. During the search, SA Dave Hohn and SA Jackson Brown interrogated Mr. Thill in the basement of his

home. At the outset of the interrogation, Mr. Thill informed the agents he had worked late the night before and gotten home around 11:30 pm.

About 5 minutes into the interrogation, SA Hohn read Mr. Thill his *Miranda* warnings and asked Mr. Thill if he was "willing to have a conversation today." And then asked Mr. Thill to sign a written rights waiver. SA Hohn stated he had "no plans" to arrest Mr. Thill as he was "being cooperative" and "answering my questions" as SA Hohn just needed "to get some information so we can get this figured out." The interrogation lasted for almost an hour and a half and was audio recorded.

As the interrogation progressed, the agents expressed concerns about "contact offenses" and stated they wanted Mr. Thill to agree to take a "quick" "tactical polygraph" to rule those out.

Mr. Thill agreed to the polygraph and was subsequently transported to a law enforcement center. The transport took approximately 20 minutes, not counting the time involved in leaving the home. Mr. Thill was introduced to SA Jeff Kollars with DCI, who then conducted a "pre-polygraph" interview and then administered the polygraph. This interview and polygraph were audio and video recorded. The total time for the interview and the polygraph was just under two and a half hours.

SA Kollars began the interview asking questions to determine if Mr. Thill was a "viable candidate" for the polygraph. He asked about sleep, mental health, alcohol, etc. Mr. Thill did not disclose to SA Kollars he had worked until 11:30 the night before. Mr. Thill did inform SA Kollars he takes medications for ADHD, specifically Adderall. During portions of the pre-polygraph interview, Mr. Thill's

2

face is not visible on the camera. But during the portions where his face is visible, a facial tick on the left of Mr. Thill's face can be seen.

Mr. Thill was given a break between the pre-polygraph interview and the administration of the polygraph. SA Kollars repositions the camera after he gets Mr. Thill hooked up for the test. An example of Mr. Thill's facial tick can be seen at the 12:17 mark. At the 12:30 mark, SA Kollars stated, "I noticed you have a little bit of a twitch," and Mr. Thill responded, "unfortunately... I've had some ticks pretty much my entire life."

Mr. Thill was required to remain still during the administration of the polygraph and keep his eyes open. Beginning at the 12:35 mark on the video, Mr. Thill can be seen beginning to get drowsy, By the 12:38 mark he was struggling to stay awake, particularly as the time between the questions seemed to get longer. The second iteration of the test began at the 12:41 mark. Mr. Thill can be seen dozing off almost immediately between questions and struggling to stay awake. The third iteration of the test begins at the 12:53 mark. At the 12:56 mark, Mr. Thill can be seen with his eyes closed and his head starts to drift back as he falls asleep. SA Kollars finally admonished Mr. Thill to keep his eyes open shortly after that moment.

Mr. Thill was then taken into an interrogation room. SA Kollars then interrogated Mr. Thill for just under an hour. Mr. Thill was then left alone in the interrogation room for, what appears to be, about 5 minutes. SA Hohn then enters the room and begins to interrogate Mr. Thill. This interrogation was both audio and video recorded, however it is not time stamped. SA Hohn questions Mr. Thill for just

over 30 minutes. During this time, Mr. Thill makes alleged admissions regarding the production of child pornography. Mr. Thill was then left alone in the interrogation room. Mr. Thill also made a handwritten statement during this time, which contained alleged admissions. By the 49:20 mark on the recoding, Mr. Thill puts his head face down on the table. By the 55:00 mark he was audibly snoring.

<u>Approximate Timeline of Events</u>

| | |
|---|---|
| 11:30 pm | Tyson gets home from work |
| 6:14 am | SA Hohn allegedly knows Mr. Thill downloaded child porn |
| 8:45 am | Search Warrant served at home |
| 8:45 am | Interrogation begins in basement |
| 10:05 am | Interrogation ends in basement |
| 10:10 am | Mr. Thill transported to LE center |
| 10:30 am | Mr. Thill arrives at LE center |
| 10:34 am | Pre-polygraph interview/ polygraph begins |
| 12:59 pm | Polygraph ends |
| 1:00 pm | Post-polygraph interrogation by SA Kollars begins |
| 2:00 pm | Post-polygraph interrogation by SA Kollars ends |
| 2:00 pm | Post-polygraph interrogation by SA Hohn begins |
| 2:05 pm | Mr. Thill makes alleged admissions to SA Hohn |
| 2:55 pm | Mr. Thill snoring in interrogation room |

Defense hired Phil Toft to review the polygraph data and video. Mr. Toft has identified several issues or problems with the administration of the polygraph and

4

the Defense intends to offer his testimony and a written report at the suppression motion hearing.

Defense counsel also hired Dr. Greg DeClue, a forensic psychologist to analyze the interrogation videos and the polygraph video. Dr. DeClue has identified factors within the interrogations which could lead to a false confession, and his testimony and a written report will be offered at the suppression motion hearing.

## ARGUMENT AND AUTHORITIES

I. **Mr. Thill did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.**

A. Mr. Thill was in custody and subjected to interrogation.

The prosecution may not introduce a defendant's statements until it has proven the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 475 (1966). *Miranda* warnings must be given when the defendant is in custody and subjected to interrogation. *Id*. Evidence obtained in violation of the Fifth Amendment may not be introduced at trial as evidence to support a defendant's guilt. *See Bram v. United States*, 168 U.S. 532, 548 (1897); *Missouri v. Seibert*, 542 U.S. 600, 607 (2004).

"Custody" includes the deprivation of "freedom of action in any significant way." *Id*. at 444; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994). The location of interrogation is a common factor courts consider in determining whether a suspect was in custody. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). However, it is not the only factor. Custody "depends on the objective circumstances of the interrogation not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323.

"Interrogation" is "express questioning" or "words or actions on the part of the police…that the police should know are reasonably likely to elicit an incriminating response." *Rhode v. Innis*, 446 U.S. 291, 300-01 (1980). "Psychological ploys" designed to elicit incriminating responses can also constitute interrogation. *Arizona v. Mauro*, 481 U.S. 520, 526-27 (1987).

    i.    *Custodial interrogation in the basement.*

In this case, Mr. Thill was interrogated at two separate locations. The first location was his basement in his own home. Eleven officers were present at the time. Between two and three officers were with Mr. Thill in the basement at various times. SA Hohn and SA Brown asked Mr. Thill questions for well over an hour in the basement.

    ii.    *Custodial interrogation at the Law Enforcement Center.*

Mr. Thill was transported to the Law Enforcement Center in handcuffs in the back of a law enforcement vehicle. Once there, he was told where to go, where to sit, and which rooms to enter. He was questioned for almost two hours by SA Kollars during the polygraph. He was then taken to another room and questioned for almost one additional hour by SA Kollars. Finally, he was then again questioned by SA Hohn, who reminded Mr. Thill of his rights under *Miranda*.

    B.  <u>Mr. Thill's waiver of *Miranda* was invalid during all separate periods of custodial interrogation.</u>

The government must prove by a preponderance of the evidence that Mr. Thill waived his *Miranda* rights. *Colorado v. Connelly*, 429 U.S. 157, 168 (1986). To prove a voluntary waiver the government must show that (1) the waiver represented an "uncoerced choice," and (2) the defendant understood both the

nature of the right being waived and the consequences of the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Mr. Thill's waiver of his *Miranda* rights was involuntary, rendering all of his statements inadmissible.

**II      All statements obtained on July 28, to include any supposed confessions, made by Mr. Thill were involuntary and thereby are inadmissible for any purpose at trial.**

The Fifth Amendment prohibits the use of involuntary statements and other coerced evidence at trial. *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003); *United States v. LeBrun*, 363 F.3d 715, 719-20 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005). To determine whether a defendant's statements were involuntary, a court must look to the totality of the circumstances and determine if the defendant's will was overborne. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Whether statements are voluntary or not depends on whether they are "the product of an essentially free and unconstrained choice by [their] maker." *Id.* at 225; *see also LeBrun*, 363 F.3d at 724. If the statements are not voluntary, then the introduction of the statements "offends due process." *Id.* at 225-26.

Courts will commonly consider several factors to determine if a statement is involuntary, such as: (1) location of the questioning, (2) whether *Miranda* warnings were given, (3) and who initiated the interview. *See Dowell v. Lincoln Cty.*, 762 F.3d 770, 775-76 (8th Cir. 2014); *United States v. Morgan*, 729 F.3d 1086, 1091-92 (8th Cir. 2014); *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014). But these are not the only factors a court will consider in determining if a statement is made voluntarily. Courts will also look to a defendant's personal characteristics. *Doody v. Ryan*, 646 F.3d 986, 1008-10 (9th Cir. 2011).

>    i.   *Statements made in the basement were involuntary.*

Eleven officers showed up at Mr. Thill's home to conduct a search pursuant to a search warrant. Mr. Thill was asleep in the basement at the time of their arrival. He had been asleep for less than two hours, after working the day before and then staying up the whole night. SA Hohn told Mr. Thill he needed to have a "private conversation" with him and then stated they needed to "go talk downstairs." SA Hohn read Mr. Thill his *Miranda* rights once they were settled in the basement. Mr. Thill had no prior experience with *Miranda* warnings. Immediately afterwards, SA Hohn stated "I can just tell you're…stressed…" "…so just take a breath." Mr. Thill responded "My heart's just…going through the roof. My mouth is just so dry I can barely speak." A few moments later Mr. Thill stated, "It's, God. I'm sorry, it's just when you...when you gotta, you know, face the abyss and actually, you know, it's like confessional, facing the priest, you know what I'm saying?" SA Hohn responded by saying, "Hey, hey. Hey, I, I'm like a priest. There's no judgment here."

>   ii.   *Statements made during the polygraph were involuntary.*

Mr. Thill was transported to the law enforcement building in the back of a law enforcement vehicle. He was then immediately taken into the polygraph examination room and introduced to SA Jeff Kollars. SA Kollars did not read Mr. Thill his *Miranda* rights and told Mr. Thill he was not under arrest. He told Mr. Thill his "…end goal today" "is to make sure that- that you're not the person that's holding people down, forcing sex on newborn infants… or the, uh, the kingpin that is manufacturing millions of videos throughout the world." Immediately after this, the following exchange took place between SA Kollars and Mr. Thill.

**Mr. Thill:** …Nobody- nobody knew about this part of me until you guys came knocking on my door.

**Jeff Kollars:** That's pretty frequent. Um, you know, I- I do a lot of these. And this is a tough thing for people to deal with.

**Tyson Thill:** Well, I told them this. I haven't even been able to confess it to my priest 'cause my shame is so high. I can't sit there and do that.

**Jeff Kollars:** Sure. Sure.

**Tyson Thill:** I said you guys put me in a position to where I had to.

**Jeff Kollars:** It's- it's forced. Right. And-

iii.     *Statements made after the polygraph were involuntary.*

At the conclusion of the polygraph, Mr. Thill was taken into an interrogation room where SA Kollars continued the interrogation. He told Mr. Thill he sees people on two paths with a "decision point." He then told Mr. Thill, "I know that you're that guy. I know that you are not the guy that, uh... You're not the evil guy out there. You're not. I know that. And I, I put faith in that. I hope I'm right in that. I've been wrong a couple times, but I'm, I'm hoping that you are not that person." SA Kollars continued for some time, eventually stating, "And we talked about, you know, this is completely a manageable scenario right now, as far as you. Yes, are you facing some serious charges? Yes. Is it something where somebody... I don't think that you're the guy that has kids in your basement chained up. I don't think that that's the case, right?"

After spending an hour with SA Kollars, SA Hohn picked up the interrogation. SA Hohn began acknowledging, "it's been a long day for you…we woke you up…you haven't anything to eat. You gotta be getting hungry, and I can

9

tell you're…hurting." This interrogation began, somewhere between 5 and 6 hours after the initial interrogation.

All of the statements made by Mr. Thill on July 28, 2021, were involuntary within the meaning of the Fifth Amendment and must be suppressed.

### III. The evidence obtained from Mr. Thill's Samsung Ultra cellphone is fruit of the poisonous tree as it was obtained after he provided his passcode to unlock the phone during an involuntary interrogation.

During the interrogation in the basement, Mr. Thill was asked to provide the passcode to his phone. Under the exclusionary rule, evidence taken in violation of the Fourth Amendment must be excluded. *See Weeks v. United States*, 232 U.S. 383, 398 (1914). This evidence must be excluded at trial in to deter constitutional violations. *See United States v. Leon*, 468 U.S. 897, 906 (1984). "Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)). The officer's obtained Mr. Thill's passcode during an involuntary statement by Mr. Thill, after an involuntary waiver of *Miranda*. Therefore, the evidence obtained from his Samsung Ultra cell phone, with passcode 9854 must be excluded.

### CONCLUSION

Mr. Thill was in custody from the time the warrant was served at his home, until the officer's drove him back home hours later. His waiver of *Miranda* was involuntary, and all his statements were involuntary within the meaning of the Fifth Amendment. Therefore, all his statements taken on July 28, 2021, must be

suppressed. As part of his statement to law enforcement included the passcode to his Samsung Ultra cellular phone, the evidence taken from that phone is fruit of the poisonous tree and must be suppressed.

Dated this 14th day of February, 2023.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender

/s/ Matthew M. Powers
_____

Matthew M. Powers
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 S. Main Ave., Suite 400
Sioux Falls SD 57104
Phone: (605) 330-4489
Fax: (605) 330-4499
Filinguser_SDND@fd.org