UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CR 21-40120 |
| Plaintiff, | ) | |
| | ) | **DEFENDANT THILL'S OBJECTION** |
| vs. | ) | **TO THE MAGISTRATE'S REPORT** |
| | ) | **AND RECOMMENDATION (Doc. 61)** |
| TYSON THILL, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Mr. Tyson Thill, by and through his attorneys, Assistant Federal Public Defender Matthew M. Powers and Hannah Moravec, objects as follows, to the magistrate's March 16, 2023, Report and Recommendation, (Doc. 61), that Mr. Thill's February 14, 2023, motion to suppress, (Docs. 48, 49) be denied. Mr. Thill respectfully urges the Court to make its own de novo determination of the issues identified in the report and recommendation, as well as Mr. Thill's corresponding motion to suppress, and grant his motion to suppress in its entirety. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003), citing *Hudson v. Gammon*, 46 F.3d 785 (8th Cir. 1995). However, if the Court is disinclined to grant Mr. Thill's motion to suppress in its entirety, Mr. Thill would request the Court to suppress all statements made by Mr. Thill to SA David Hohn during the "post-polygraph" interrogation.

## BACKGROUND

A.  **Relevant Procedural History**

Mr. Thill was indicted September 8, 2021, on one count of Receipt and Distribution of Child Pornography and one count of Attempted Production of Child Pornography. (Doc. 1.) He was arraigned on September 14, 2021. Mr. Thill filed his motion to suppress (Docs. 48, 49) on February 14, 2023.

This Court assigned the matter to the magistrate for recommendation. The magistrate held a hearing on the motion on March 2, 2023. On March 16, 2023, the magistrate issued her report and recommendation. The magistrate recommended the motion be denied. (Doc. 61.) Mr. Thill objects and would request the motion be granted in its entirety.

B.  **Relevant Facts**

On July 28, 2021, at 8:47 a.m. law enforcement agents served a search warrant on the home of Tyson Thill. Eleven agents were present for the search, led by Homeland Security Investigator (HSI) Special Agent (SA) Dave Hohn. This was followed by SA Hohn transporting Mr. Thill to a law enforcement building in Sioux Falls, where Mr. Thill was interrogated further.

### Length of Interrogation

SA Hohn interrogated Mr. Thill in the basement of his home beginning shortly after 8:47 a.m. The interrogation was audio recorded by SA Hohn. Ex. 3, Part 1. The audio recording is 1 hour and 23 minutes in length. *Id*. The recording was later transcribed and is part of government Exhibit 4. After the interrogation in the basement, Mr. Thill was transported to a law enforcement center in Sioux Falls.

He was then interviewed and polygraphed by SA Jeff Kollars. This was video recorded. Ex. 3, polygraph interview. The video of this exchange is 2 hours and 24 minutes in length. *Id*. This video was also later transcribed and is also part of government Exhibit 4. Following the polygraph, Mr. Thill was interrogated by SA Kollars. This was video recorded and is 1 hour in length. Ex. 3. By the completion of this portion of the interrogation, Mr. Thill had still not made any admissions regarding the production of Child Pornography, although he had been interrogated for a total time of 4 hours and 47 minutes. The exact time Mr. Thill had been with law enforcement that morning is unknown, as it would include transport time and any permitted breaks, but the polygraph video is time stamped and can be seen as concluding at 12:59:26 p.m. *See* Ex. 3. Mr. Thill was interrogated for another full hour after this by SA Kollars, before SA Hohn began his second interrogation of Mr. Thill. SA Hohn resumed his interrogation of Mr. Thill following SA Kollars. This was also video recorded. Ex. 3.

Dr. Greg DeClue testified on behalf of Mr. Thill at the suppression hearing. He was asked about the importance of the length of the interrogation. He testified that, in undisputed instances of false confession, it has been demonstrated the length of the interrogation is a risk factor which has contributed to known false confessions. MT 151:11-25, 152:1-10. He also testified that an interrogation of 5 hours or longer was a "long" interrogation, in his opinion. MT 152:11-25.

**Lack of Sleep**

A few moments into the initial interrogation in the basement, Mr. Thill informed the agents he had worked late the night before, stating, "I don't think I got

home until, like, 11:30." *See* Ex. 4 (Basement Interview Transcript (BIT)), 2: 9-13.

This is the first indicator of the lack of sleep by Mr. Thill prior to being interrogated.

The next major indicator of the lack of sleep by Mr. Thill was his conduct during the

polygraph. Specifically, he can be seen falling asleep towards the end of the

polygraph. *See* Ex. 3, polygraph video.

| Time Stamp | Action |
|---|---|
| Between 2:08:00 and 2:12:00 | Noticeable drowsiness, with eyes popping open when questions are asked |
| 2:17:00 | Second Test starts |
| 2:17:00 | Mr. Thill starts to struggle to keep eyes open |
| 2:19:00 | During this period Mr. Thill's eyes close, and his head wobbles |
| 2:20:30 | Mr. Thill can be seen jerking himself awake |
| 2:21:28 | Mr. Thills eyes close and he head goes back |

SA Kollars testified he did not believe Mr. Thill was falling asleep during the

polygraph. *See* Ex. 3 Motions Transcript (MT) 98: 20-25. However, defense expert,

Phillip Toft also testified. He testified both the video and the breathing monitor

showed Mr. Thill was falling asleep, or dozing off, towards the end of the polygraph.

MT 118:2-13, 127:1-16.

The next indicator of Mr. Thill's lack of sleep comes from SA Hohn. SA Hohn

testified he had been provided information by SA Josh Hauck, that the last

download observed on Mr. Thill's phone on the morning of the interrogation was at

6:14 a.m. MT 52:1-25, 66:24-25, 67:1-2; Ex. 4, post-polygraph interview 9:24-25.

Further, SA Hohn testified he was aware of this fact prior to beginning his final

interrogation of Mr. Thill. *Id*.

4

The final indicator of lack of sleep comes at the conclusion of the second interrogation of Mr. Thill by SA Hohn. *See* Ex. 3.

| Time Stamp | Action |
|---|---|
| 49:20 | Mr. Thill lays his face down on table |
| 57:00 | Light snoring begins |
| 57:30 | Heavy snoring |
| 59:34 | Mr. Thill awoken |

SA Hohn testified regarding these events. He was asked by defense counsel if he had watched the portion of the video "where he is face down snoring in the interview room?" MT 67:11-12. SA Hohn replied, "I don't think he's snoring. I think he's just breathing. He actually has his face directly on the search warrant and he's -- I didn't – I don't think he's snoring at all. I think he's literally -- because as I remember, you can see his eyes moving that he's just sitting there like kind of coming to grips with what the day has gotten. I didn't take it that he was sleeping or snoring. That's a -- that's my take on it." MT 67:13-20. However, the Magistrate Judge found that, "Mr. Thill was asleep in the interview room for approximately nine minutes." Doc. 61 at 36.

Dr. DeClue also testified regarding that "lack of sleep or limited sleep is recognized as a risk factor for making a person more vulnerable to police persuasion." MT 153:18-24.

A final note regarding sleep, during SA Hohn's post-polygraph interrogation of Mr. Thill, the following exchange regarding sleep took place:

David Hohn: When's the last time you looked at pornography?

Tyson Thill: Like, last night.

David Hohn: How 'bout 6:00 this morning?

5

> Tyson Thill: That was actually a continuation of last night, I think. I stayed awake watching TV, and I kinda had it in my hand, 'cause I was ...
>
> David Hohn: Okay. So that's what I, what I'm saying, like, how good Jackson is, I know he looked at the last time you've saved an image was 6:14 this morning.

Ex. 4, Post-polygraph interview by David Hohn 9:19-25.

### Reid Technique

Dr. DeClue testified he has completed the training at the Reid Institute and has worked with the director of an interrogation institute to develop training. MT 144:15-18. He was asked to identify instances of the Reid Technique being utilized throughout the interrogations of Mr. Thill. He identified several them to include "forced choice." MT 147:11-13. He also identified instances where SA Kollars was refusing to accept Mr. Thill's denials, another instance of the Reid Technique. MT 148:10-24.

### Appeal to Religion

Towards the beginning of the Basement interview of Mr. Thill by SA Hohn, the following exchange took place:

> Tyson Thill: It's, God (laughing). I'm sorry, it's just when you... when you gotta, you know, face 12 the abyss and actually, you know, it's like confessional, facing the priest, you know what I'm 13 saying? Um- 14
>
> Dave Hohn (HSI): Hey, hey. Hey, I, I'm like a priest. There's no judgment here.

SA Hohn brought up Mr. Thill's reference to his priest again at the end of the day. Mere moments after the below exchange, Tyson confesses to attempting to produce child pornography for the first time.

> David Hohn: 'Kay? I would rather you go get help than it forced upon you behind, i- in, in a jail setting, or a prison setting. You don't, you, you, you

6

talked about how you'd even thought about going to your pa- uh, sorry, your priest, right?

Tyson Thill: Mm-hmm.

David Hohn: You're Catholic?

Tyson Thill: Yep.

David Hohn: But you were ashamed?

Tyson Thill: Oh, God, yes.

Ex. 4, Post-polygraph interview, 5:11-29.

### Prosecutor's decision

The above exchange between SA Hohn and Mr. Thill came on the immediate heels of SA Hohn discussing the need for Mr. Thill to make additional admissions if he was someone who just needed treatment.

> David Hohn: It is serious. A- and me and Jackson can w- try to give you the opportunity to be honest. The polygrapher tried to give you every opportunity to be honest. The reason we're trying to do that is I know this seems, um, like, "Oh, I can't believe it." We're not trying to jam you up, and get you in more trouble. What we're trying to do is get to the truth, because if you leave here today and Jackson finds shit on your phone, and it turns out you've been lying to us this whole time, h- how do you think that's gonna look to a prosecutor that's deciding whether or not you should be charged, or if you're somebody that just needs treatment?
>
> Tyson Thill: Oh, no, I ... Yeah, I, I, believe me, I, I get you.

Ex. 4, Post-polygraph interview, 4:19-26.

### MAGISTRATE'S FINDING TO WHICH MR. THILL OBJECTS

Mr. Thill objects to the magistrate's conclusions regarding the voluntariness of his *Miranda* waivers, the voluntariness of his statements to law enforcement within the meaning of the Fifth Amendment, the conclusion that the material on his

phones were subject to the inevitable discovery doctrine, and that the materials seized from his phones were not fruit of the poisonous tree.

## ARGUMENT

### I. Mr. Thill did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.

A. <u>Mr. Thill was in custody and subjected to interrogation.</u>

The prosecution may not introduce a defendant's statements until it has proven the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 475 (1966). *Miranda* warnings must be given when the defendant is in custody and subjected to interrogation. *Id*. Evidence obtained in violation of the Fifth Amendment may not be introduced at trial as evidence to support a defendant's guilt. *See Bram v. United States*, 168 U.S. 532, 548 (1897); *Missouri v. Seibert*, 542 U.S. 600, 607 (2004).

"The government does not dispute that Mr. Thill was in custody and was interrogated beginning with the basement interview and continuing through the post-polygraph interview." Doc. 61 at 17.

B. <u>Mr. Thill's waiver of *Miranda* was invalid during all separate periods of custodial interrogation.</u>

The government must prove by a preponderance of the evidence that Mr. Thill waived his *Miranda* rights. *Colorado v. Connelly*, 429 U.S. 157, 168 (1986). To prove a voluntary waiver the government must show that (1) the waiver represented an "uncoerced choice," and (2) the defendant understood both the nature of the right being waived and the consequences of the waiver. *Moran v.*

*Burbine*, 475 U.S. 412, 421 (1986).  Mr. Thill's waiver of his *Miranda* rights was involuntary, rendering all his statements inadmissible.

**II.    All statements obtained on July 28, to include any supposed confessions, made by Mr. Thill were involuntary and thereby are inadmissible for any purpose at trial.**

The Fifth Amendment prohibits the use of involuntary statements and other coerced evidence at trial.  *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003); *United States v. LeBrun*, 363 F.3d 715, 719-20 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).  To determine whether a defendant's statements were involuntary, a court must look to the totality of the circumstances and determine if the defendant's will was overborne.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).  Whether statements are voluntary or not depends on whether they are "the product of an essentially free and unconstrained choice by [their] maker."  *Id*. at 225; *see also LeBrun*, 363 F.3d at 724.  If the statements are not voluntary, then the introduction of the statements "offends due process."  *Id*. at 225-26.

Courts will commonly consider several factors to determine if a statement is involuntary, such as: (1) location of the questioning, (2) whether *Miranda* warnings were given, (3) and who initiated the interview.  *See Dowell v. Lincoln Cty.*, 762 F.3d 770, 775-76 (8th Cir. 2014); *United States v. Morgan*, 729 F.3d 1086, 1091-92 (8th Cir. 2014); *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014).  But these are not the only factors a court will consider determining if a statement is made voluntarily.  Courts will also look to a defendant's personal characteristics.  *Doody v. Ryan*, 646 F.3d 986, 1008-10 (9th Cir. 2011).

The government has not proven Mr. Thill got any sleep the night prior to his interrogation. SA Hohn specifically told Mr. Thill the **last** image he downloaded prior to their arrival at the home was at 6:14 that morning. Mr. Thill made statements throughout the day about receiving an adequate amount of rest, but his body language during the polygraph and his falling asleep after the last interrogation by SA Hohn belie this notion.

The length of the interrogations in this case also lead to the suggestion of an "overborne will" on the part of Mr. Thill. Dr. DeClue testified about the demonstrated significance of this in false confession cases. This suggests the length of an interrogation is equally important factor in the instance of an involuntary confession. The length of the interrogation becomes increasingly important as the interrogations continued. Significantly, it was after five hours of interrogation Mr. Thill made admissions regarding the production of child pornography.

Dr. DeClue highlighted specific instances of the use of the Reid Technique throughout the post-polygraph interrogation by SA Kollars. These instances further broke down and wore down Mr. Thill will.

His will was completely overborne when SA Hohn began his portion of the post-polygraph interrogation. This instance is best demonstrated by SA Hohn's reference to the prosecutor deciding between charging Mr. Thill with a crime or sending him to treatment, which was immediately followed by SA Hohn bringing up Mr. Thill's reference to his Catholic priest over 5 hours previously. It cannot be a coincidence Mr. Thill finally admitted to the production of child pornography offense after this exchange.

**III.     The evidence obtained from Mr. Thill's Samsung Ultra cellphone is fruit of the poisonous tree as it was obtained after he provided his passcode to unlock the phone during an involuntary interrogation.**

During the interrogation in the basement, Mr. Thill was asked to provide the passcode to his phone. Under the exclusionary rule, evidence taken in violation of the Fourth Amendment must be excluded. *See Weeks v. United States*, 232 U.S. 383, 398 (1914). This evidence must be excluded at trial in to deter constitutional violations. *See United States v. Leon*, 468 U.S. 897, 906 (1984). "Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)). The officer's obtained Mr. Thill's passcode during an involuntary statement by Mr. Thill, after an involuntary waiver of *Miranda*. Therefore, the evidence obtained from his Samsung Ultra cell phone, with passcode 9854 must be excluded.

**IV.     In the alternative, if the Court finds Mr. Thill's initial statements to be voluntary, it should suppress all statements made by Mr. Thill during the Post-polygraph interrogation by SA Hohn.**

The voluntariness of Mr. Thill's interactions with law enforcement should be viewed as a continuum. Just as any individual interaction with law enforcement could start out voluntarily, over time, the voluntary nature of the interaction could change.

That is what happened in this case. Mr. Thill was interrogated for over five hours before he made any admissions regarding the production of child pornography. He was continually interrogated by both SA Kollars and SA Hohn

regarding this issue, even though he denied it throughout. *See* Ex. 4. When SA Hohn began his post-polygraph interrogation of Mr. Thill, he knew Mr. Thill was operating on little to no-sleep. This is apparent by his statement to Mr. Thill, "the last time you've saved an image was 6:14 this morning." Further, SA Hohn testified he knew this fact going into that final interrogation. MT 52:1-25, 66:24-25, 67:1-2.

The courts look to the voluntariness of an individual's statements by determining if they are "the product of an essentially free and unconstrained choice by [their] maker." *Bustamonte*, 412 U.S. at 225; *see also LeBrun*, 363 F.3d at 724. Mr. Thill had chosen, for over 5 hours, not to disclose any information regarding the production of child pornography. But after 5 hours of interrogation, where he was falling asleep during the polygraph, he was no longer making a free and unconstrained choice. His choice became even less free after SA Hohn discussed probation and brought up Mr. Thill's priest. Mr. Thill's statements to SA Hohn during the post-polygraph interrogation are involuntary and must be suppressed, under the totality of the circumstances.

## CONCLUSION

Mr. Thill was in custody from the time the warrant was served at his home, until the officer's drove him back home hours later. His waiver of *Miranda* was involuntary, and all his statements were involuntary within the meaning of the Fifth Amendment. Therefore, all his statements taken on July 28, 2021, must be suppressed. In the alternative, the Court should find all statements made to SA Hohn during the post-polygraph interrogation to be involuntary and they should be suppressed in their entirety.

As part of his statement to law enforcement included the passcode to his Samsung Ultra cellular phone, the evidence taken from that phone is fruit of the poisonous tree and also must be suppressed.

Dated this 5th day of April, 2023.

> Respectfully submitted,
>
> JASON J. TUPMAN
> Federal Public Defender
>
>   /s/   Matthew M. Powers
> _____
> Matthew M. Powers
> Assistant Federal Public Defender
> Attorney for Defendant
> Office of the Federal Public Defender
> Districts of South Dakota and North Dakota
> 101 S. Main Ave., Suite 400
> Sioux Falls SD  57104
> Phone: (605) 330-4489
> Fax: (605) 330-4499
> Filinguser_SDND@fd.org